IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2026 Session

**STATE OF TENNESSEE v. JASON O. MILLER**

**Appeal from the Circuit Court for Madison County**
**No. 24-84      Kyle C. Atkins, Judge**

_____

**No. W2025-00660-CCA-R3-CD**

_____

A Madison County jury convicted the defendant, Jason O. Miller, of aggravated assault and domestic assault, for which he received an effective sentence of eight years in confinement to be served at 100%. On appeal, the defendant challenges the sufficiency of the evidence supporting his conviction for aggravated assault. The State concedes that the evidence is insufficient to support the defendant's conviction. Upon review, we conclude there was insufficient evidence to sustain the defendant's conviction for aggravated assault. However, as there was sufficient evidence to sustain a conviction of assault, we reverse the judgment for aggravated assault, modify the conviction to assault, and remand for a new sentencing hearing and entry of an amended judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and TOM GREENHOLTZ, JJ., joined.

Mitchell A. Raines, Assistant Public Defender, Tennessee District Public Defenders Conference (on appeal) and Jeremy Epperson, District Public Defender, and Caroline Ballentine, Assistant Public Defender (at trial), for the appellant, Jason O. Miller.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Jody Pickens, District Attorney General; and Joshua B. Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On the afternoon of August 13, 2023, Latrona Polk, the defendant's ex-girlfriend, arrived at her house to find the defendant's vehicle parked at the end of her driveway. When Ms. Polk approached the defendant, he told her that he had a birthday present for her. Ms. Polk asked the defendant to leave, but the defendant, who remained inside his vehicle, told Ms. Polk to "come here, come here." Ms. Polk informed the defendant that she was going to call the police, and the defendant "pointed [a] gun at [her] and he told [her] that he [would] hurt [her] if [she] was to, you know, talk to anybody or move on." Ms. Polk, who felt "upset" and "scared," immediately called the police, and the defendant fled the scene.

On cross-examination, Ms. Polk acknowledged that her mother was charged with stabbing the defendant in October 2022. She testified that the case is still pending and denied telling the defendant that she would not testify in this case if he did not testify in her mother's case. She also acknowledged that neither her statement to the police nor her preliminary hearing testimony mentioned the defendant pointing the gun at her.

Sergeant Bryan Champine with the Jackson Police Department responded to a service call at Ms. Polk's residence. Ms. Polk advised Sergeant Champine that she was involved in a domestic dispute with the defendant and that the defendant pointed a gray and silver firearm at her. Ms. Polk described the defendant's vehicle as a black Ford Expedition and provided a possible residence where he could be located. Based on this information, Sergeant Champine proceeded to the location and observed the defendant exiting his vehicle. The defendant was detained, and Officer Jason Jones, who was assisting Sergeant Champine, observed a bag of marijuana sitting in plain view inside the defendant's vehicle. Sergeant Champine and Officer Jones conducted a probable-cause search of the defendant's vehicle and recovered "the bag that [they] observed in plain view" as well as "a UX XCP .177 caliber pellet gun" underneath the driver's seat.

On cross-examination, Sergeant Champine acknowledged that there is a difference between pointing and displaying a firearm and that his report indicated the defendant displayed the pellet gun to Ms. Polk. Sergeant Champine testified that the pellet gun used by the defendant was not "manufactured specifically to be used for deadly force as a deadly weapon." On redirect examination, Sergeant Champine agreed that the pellet gun could "most certainly hurt somebody" or "cause serious bodily injury to your eye." The warning on the side of the pellet gun read "warning: not a toy. Misuse or careless use may cause serious injury or death." On recross-examination, Sergeant Champine agreed that misuse would probably include pointing the pellet gun at someone. However, his report did not indicate the defendant pointed the pellet gun at anyone.

The defendant declined to present evidence. Following deliberations, the jury convicted the defendant of aggravated assault and domestic assault, and the trial court

imposed an effective sentence of eight years in confinement at 100%. The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

## *Analysis*

The defendant's sole issue on appeal is the sufficiency of the evidence to support his aggravated assault conviction.[1] The defendant specifically argues the State failed to establish that the pellet gun was a deadly weapon. The State agrees with the defendant.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

---

[1] The defendant does not challenge his conviction for domestic assault.

As charged in this case, aggravated assault occurs when a person intentionally or knowingly causes another to reasonably fear imminent bodily injury by using or displaying a deadly weapon. Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(A)(iii). Deadly weapons may be placed into two categories – deadly per se or deadly by reason of the manner in which they are used. *Morgan v. State*, 415 S.W.2d 879, 882 (Tenn. 1967). A deadly weapon per se includes "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(6)(A). A deadly weapon by manner of use includes "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* at § 39-11-106(a)(6)(B). Our supreme court has clarified that, in cases that do not involve a deadly weapon per se, the item "will only be considered a deadly weapon if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." *State v. McGouey*, 229 S.W.3d 668, 674 (Tenn. 2007). "Serious bodily injury" means, in pertinent part, bodily injury that involves a substantial risk of death, protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. Tenn. Code Ann. § 39-11-106(a)(36).

The State concedes that "the evidence is insufficient to sustain [the] defendant's conviction for aggravated assault, and the conviction should be reduced to assault." We agree. Our supreme court previously held that "[a] carbon dioxide powered pellet gun is not a deadly weapon per se because it is not a 'firearm.'" *McGouey*, 229 S.W.3d at 672. Furthermore, there is no evidence in the record that the defendant used the pellet gun "in a manner that could cause death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(6). The defendant remained in his vehicle at all times and either displayed or pointed the pellet gun at Ms. Polk, who was standing in the driveway. Ms. Polk testified that she was scared and called the police, and the defendant immediately fled the scene. The facts of this case simply do not support a finding that the defendant used or intended to use the pellet gun in a manner that could cause death or serious bodily injury. Instead, the evidence supports a conviction for assault. "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). There was sufficient evidence in the record for a jury to conclude that Ms. Polk reasonably feared imminent bodily injury when the defendant threatened her with what she believed to be a firearm. Accordingly, we modify the conviction to assault, a Class A misdemeanor, and we remand the defendant's case for a new sentencing hearing. Furthermore, on remand, the trial court should merge the defendant's domestic assault conviction into his assault conviction. *See State v. Freitas*, No. W2015-02492-CCA-R3-CD, 2016 WL 5864632, at *6 (Tenn. Crim. App. Oct. 7, 2016), *no perm. app. filed*.

## *Conclusion*

For the aforementioned reasons, we reverse the judgment for aggravated assault, modify the conviction to assault, and remand for a new sentencing hearing and entry of an amended judgment.

S/ *J. ROSS DYER*  
J. ROSS DYER, JUDGE